**No. 24-11478**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

ANGELA GILDER-LUCAS,

*Plaintiff-Appellant,*

v.

MERRICK GARLAND, in his official capacity as
United States Attorney General,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Florida, Tallahassee Division

No. 4:23-cv-56-AW-MJF

---

## APPELLANT'S INITIAL BRIEF

---

David Scher
Hoyer Law Group, PLLC
1300 I Street NW
Washington, D.C. 20005
202-975-4994
dave@hoyerlawgroup.com

*Attorney for Appellant Angela Gilder-Lucas*

**No. 24-11478**
**Gilder-Lucas v. Garland**

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

Estes, Sean – attorney for Appellant

Garland, Merrick, in his official capacity as United States Attorney General –
Appellee

Gilder-Lucas, Angela – Appellant

Hoyer Law Group, PLLC – law firm for Appellant

Lindsey, Herbert – attorney for Appellee

Scher, David – attorney for Appellant

## Statement Regarding Oral Argument

Appellant Angela Gilder-Lucas ("Appellant" or "Ms. Gilder-Lucas")

requests oral argument, as this appeal concerns an issue of critical importance

regarding the burden of proof in summary judgment cases.

# Table Of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement ............C1

Statement Regarding Oral Argument ................................................................. i

Table of Contents ................................................................................................ ii

Table of Citations............................................................................................... iv

Jurisdictional Statement .................................................................................... vii

Statement of the Issues...................................................................................... 1

Statement of the Case......................................................................................... 2

Procedural History ............................................................................................. 2

Statement of Facts.............................................................................................. 3

Standard of Review............................................................................................ 15

Summary of the Argument................................................................................ 16

Argument............................................................................................................ 17

    I. Appellee Bears the Burden of Proof on Summary Judgment ............. 17

    II. Appellant Can Establish a Prima Facie Case for Failure to
        Accommodate her Disability.......................................................... 19

    III. Appellant Establishes a Prima Facie Case for Reprisal .................. 23

    IV. The District Court Failed to View the Claims in a Light
        Most Favorable to Appellant.......................................................... 28

    V. Appellee Failed to Prove the Lack of Genuine Issues of
        Material Fact.................................................................................... 32

VI. Appellant Exhausted her Administrative Remedies ........................ 39

Conclusion ................................................................................................ 42

Certificate of Compliance ...................................................................... 43

Certificate of Service ............................................................................ 44

## Table of Citations

**Cases**                                                                                    **Page**

*Aka v. Washington Hospital Center,* 156 F.3d 1284 (D.C. Cir. 1998)............. 17

*Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306 (11th Cir. 2007)............................ 17

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)......................... 17-18, 29

*Burlington Northern & Santa Fe Railway Co. v. White*,
    126 S. Ct. 2405 (2006)............................................................................ 24

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .................................................. 32

*Crawford v. Metropolitan Government of Nashville and Davidson County,
    Tennessee,* 129 S. Ct. 846 (2009) .......................................................... 24

*DeHorney v. Bank of America Nat. Trust & Sav. Assoc.,*
    879 F.2d 459 (9th Cir. 1989) .................................................................. 32

*Gomez-Perez v. U.S. Postal Service*, 128 S. Ct. 1931 (2008) ......................... 24

*Green v. Cou. Union Foundry Co.,* 281 F.3d 1229 (11th Cir. 2002) .............. 39

*Grier v. Medtronic Inc.,* 99 F.3d 240 (7th Cir. 1996)...................................... 18

*Hochstadt v. Worcester Foundation for Experimental Biology Inc.*,
    425 F. Supp. 318 (D. Mass. 1976), *aff'd,* 545 F.2d 222 (1st Cir. 1976) 24

*Hossaini v. Western Missouri Medical Center,* 97 F.3d 1085 (8th Cir. 1996). 18

*McGeshick v. Principi,* 357 F.3d 1146 (10th Cir. 2004) .................................. 20

*Mengine v. Runyon,* 114 F.3d 415 (3rd Cir. 1997) .......................................... 19

*Pantazes v. Department of Housing and Urban Development,*
    366 F. Supp. 2d 57 (D.D.C. 2005)........................................................ 20

*Pioch v. IBEX Eng'g Servs.,* 825 F.3d 1264 (11th Cir. 2016) ........................ 29

iv

*Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir. 1981) ....... 19-20

*Raj Jones v. Mia.-Dade Cty.*, No. 1:22-cv-21990-DPG,
     2024 U.S. Dist. LEXIS 138190, at *13 (S.D. Fla. Aug. 5, 2024) ..... 41-42

*Reeves v. Sanderson Plumbing Prods., Inc.,* 120 S.Ct. 2097 (2000).......... 18, 28

*Robinson v. Shell Oil Co.,* 117 S. Ct. 843 (1997) ............................................. 24

*Sanchez v. Vilsack*, 695 F.3d 1174 (10th Cir. 2012)......................................... 20

*Schwapp v. Town of Avon*, 118 F.3d 106 (2nd Cir. 1997)............................... 18

*Smith v. Lockheed-Martin Corp.,* 644 F.3d 1328 (11th Cir. 2011) .................. 26

*Stitzel v. N.Y. Life Ins. Co.,* 361 F. App'x 20 (11th Cir. 2009)........................ 29

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981)..... 26

*Tynes v. Fla. Dep't of Juv. Just.,* 88 F.4th 939 (11th Cir. 2023) ...................... 26

*U.S. Airways Inc. v. Barnett,* 535 U.S. 391 (2002)........................................... 19

**Statutes**                                                                      **Page**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.................. 2

Rehabilitation Act of 1973 ......................................................................... 2, 20

     29 U.S.C. § 701 et seq ........................................................................... 2

     29 U.S.C. § 794(a) ............................................................................... 20

Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 ........................... 21

ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ........... 19

Federal Sector Equal Employment Opportunity 29 C.F.R. § 1614 ........... 32, 40

29 C.F.R. § 1614.109(g) .......................................................... 32

29 C.F.R. § 1614.105(a) .......................................................... 40

**Rules**                                                              **Page**

Fed. R. Civ P. 56(a)............................................................. 32

Fed. R. Civ. P. 56(c)(1)...................................................... 32-33

**Jurisdictional Statement**

This is a direct appeal from summary judgment in a civil case. Appellant filed this action on October 25, 2022. (Doc 1). On April 5, 2024, the District Court granted summary judgment for Appellee and against Appellant (Doc 29) and entered final judgment in favor of Appellee that same day. (Doc 30). On May 6, 2024, Appellant timely appealed. (Doc 31). This Court thus has subject matter jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal from a district court's final judgment that disposed of all claims.

## Statement of the Issues

Whether the United States District Court erred:

(1) when it held that Appellee had met its burden of proof in establishing no

material facts remain in genuine dispute;

(2) when it held that Appellant's claim alleging discrimination based on the

denial of her reasonable accommodation was time-barred;

(3) when it dismissed the testimony of Human Resources Manager (HRM)

Shellie Taylor as being hearsay; and

(4) when it held that Appellant failed to establish a "mosaic of circumstantial

evidence" that might otherwise cause a reasonable jury to find:

      a.  Appellee liable for failing to accommodate Appellant's disabilities;

      b.  that Appellant could establish a claim of reprisal when she was

         placed on Absent Without Leave (AWOL); or

      c.  Appellee failed to accommodate Appellant's disabilities.

**Statement of the Case**

**Procedural History**

Appellant initiated the instant lawsuit at the administrative level when, on October 26, 2021, she filed a formal complaint of discrimination with the Equal Employment Opportunity ("EEO") office at the United States Department of Justice ("DOJ"), Federal Bureau of Prisons ("BOP"), Federal Correctional Institution ("FCI") in Tallahassee, Florida.[1] (Report of Investigation ("ROI"), Doc 25-31 – Pgs 163-164). Appellant requested an amendment to her formal complaint on January 25, 2022, and on January 31, 2022, the Bureau accepted Appellant's claims as follows:

> Appellant was subjected to discrimination based on her disability and in reprisal (prior protected activity) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, when on:
>
> 1. August 23, 2021, Appellant was placed on Absent Without Leave ("AWOL") status;
>
> 2. November 22, 2021, the warden denied Appellant's request for a reasonable accommodation;
>
> 3. December 20, 2021, management failed to place Appellant in another position as part of her reasonable accommodation; and
>
> 4. January 12, 2022, management placed another staff member in Appellant's Supervisor of Education position.

---

[1] DOJ/BOP is herein referred to as Appellee, BOP, and the Bureau.

(Doc. 25-31 – Pgs 163-164).

Following an investigation, Appellant requested a hearing before an Administrative Judge, discovery was conducted, and on November 14, 2023, the Bureau filed a Motion for Summary Judgment. (Doc 17). Appellant filed an opposition to the Bureau's motion on March 1, 2024, and on April 5, 2024, the United States District Court for the Northern District of Florida, Tallahassee Division, issued an Order Granting the Bureau's motion.[2] (Doc. 26, 29). On May 6, 2024, Appellant filed a Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit. (Doc 31). Appellant submits this Initial Brief to support her instant appeal.

### Statement of Facts

1.      Appellant is a veteran of the United States Army and began working for the Department of Justice ("DOJ") Bureau of Prisons ("BOP" or "the Bureau") in October 2012. (Appellant's Deposition, Doc 16-1 - Pgs 24:23, 14:17-20).

2.      During the events of the instant complaint, Appellant was a Supervisor of Education, GS-12 at the Agency's Federal Correctional Institution ("FCI") Tallahassee, located in Tallahassee, Florida. (Doc 16-1 - Pgs 17:19-24).

---

[2] The United States District Court for the Northern District of Florida, Tallahassee Division is herein referred to as the District Court, or simply as the Court.

3.      In November 2022, Appellant accepted a non-supervisory Employee
Development Manager, GS-11 position in Montgomery, Alabama, as a result of a
reasonable accommodation she first filed in May 2021 – approximately eighteen
(18) months earlier. (Doc 16-1 - Pgs 14:17-25, 16:15).

4.      To date, Appellant is still employed by BOP in this same non-
supervisory Employee Development Manager, GS-11 position in Montgomery,
Alabama. (Doc 16-1 - Pgs 14:17-25).

5.      The BOP's failure to reassign Appellant as a reasonable
accommodation for a period of 18 months serves as the basis of the Equal
Employment Opportunity ("EEO") complaint upon which this appeal is based.
(Doc 25-31 – Pg 3).

6.      Specifically, Appellant was subjected to discrimination based on
disability (general anxiety disorder, adjustment disorder) and reprisal (previous
protected activity) when: (1) on August 23, 2021, Appellant was placed on Absent
Without Leave ("AWOL") status; (2) on November 22, 2021, the warden denied
Appellant's request for a reasonable accommodation; (3) on December 20, 2021,
management failed to place Appellant in another position as part of her reasonable
accommodation; and (4) on January 12, 2022, management placed another staff
member in Appellant's Supervisor of Education position. (Doc 16-1 – Pg 32:7-25;
Defendant's Motion for Summary Judgment, Doc. 17 – Pg 2).

*Reasonable Accommodation*

7.      Appellant suffers from anxiety stemming from what she describes as a hostile work environment at FCI Tallahassee, and her anxiety has caused her to suffer from panic attacks and miss work for substantial periods of time. (Doc 25-31 – Pgs 188-189). Appellant's disability was even accepted by the Department of Labor ("DOL") as generalized anxiety disorder and adjustment disorder stemming from her workplace conditions at FCI Tallahassee. (Doc 25-31 – Pg 189).

8.      On May 10, 2021, Appellant requested a reasonable accommodation through the use of DOJ Form 100A, Request for Reasonable Accommodation, wherein she sought reassignment to her "home" institution of Federal Prison Camp ("FPC") Montgomery and an extended period of leave – both due to the worsening of her anxiety disorder. (Doc 25-31 – Pgs 191, 274-275).

9.      Also, on May 10, 2021, Appellant sent a memorandum to Warden Erica Strong reiterating her request for reassignment in an attempt to avoid further exposure to the hostility of FCI Tallahassee, which had been exacerbated the effect of her anxiety disorder. (Doc 25-31 – Pgs 191, 276-277).

10.     On June 2, 2021, Appellant sent another memorandum to Warden Strong requesting extended leave due to her medical disabilities. (Doc 25-31 – Pg 7).

11.      Appellant's physician, Dr. Mieles, recommended that Appellant take time off work and not return until she receives a transfer out of FCI Tallahassee. (Doc 17 – Pg 13; Doc 16-1 – Pgs 194:15-25, 195:7-14, 196:1-10, 196:11-23, 199:8-25, 247:12-16; October 27, 2021 Letter from Dr. Mieles, Doc 16-33).

12.      Human Resource Manager ("HRM") Shellie Taylor corroborates Appellant's contentions of harassment, discrimination, and reprisal when she provided affidavit testimony during the EEO investigation of this matter stating in pertinent part:

> As with a [sic] me here at this institution, Ms. Gilder-Lucas was also harassed by being moved out of her office for nearly 9 months. She was assigned tasks she was not cleared to do, such as clear in inmates in R&D without the proper CIMS training. This type of humiliation by being moved out of your position and then being told you have to go back is extremely stressful. On top of that she had a department had did not want to follow a new supervisor. One of the employees was very aggressive in a meeting to the point of someone having to stand between Ms. Gilder-Lucas and the employee to protect her. It is a very difficult place to work when you do not have any support from your superiors.

(Doc 25-31 – Pgs 250).

13.      Appellant's May 10, 2021, request for reassignment as a reasonable accommodation would have enabled her to perform the essential functions of any future position she would later qualify for outside of FCI Tallahassee. (Doc 25-31 – Pg 191; Doc 17 – Pg 6; DOJ Form 100A, Doc 16-14; Plaintiff's Reasonable Accommodation Request Memo, Doc 16-15).

14.    As mentioned in No. 5 above, BOP did not reassign Appellant to a position outside of FCI Tallahassee until November 2022 – 18 months after Appellant first requested a reassignment as a reasonable accommodation. (Doc 25-31 – Pg 3; Doc 16-1 – Pg 16:15).

15.    On May 18, 2021, AW Colon responded to Appellant's request for a reasonable accommodation by requesting current supporting medical information. (Doc 25-31 – Pg 281).

16.    On June 2, 2021, Appellant sent a Memorandum to Warden Strong requesting 30 days' extended leave, which Appellant received. She was approved for an additional two weeks. (Doc 25-31 – Pg 281).

17.    Warden Strong received notification from HRM Taylor that Appellant's medical condition meets FMLA regulation; that Appellant could take leave from June 14-July 8, 2021, and then she can take up to 4 days a month beginning July 8, 2021 not to exceed 480 hours total in 12 months. (Doc 25-31 – Pg 218).

18.    On June 11, 2021, HRM Taylor sent Appellant a letter stating in pertinent part that the Agency determined that reassignment is the most effective reasonable accommodation. It also said, "we will assist you with searching for vacant positions for which you may be qualified at FPC Montgomery and the

Residential Reentry Management Office in Montgomery." (Doc 25-31 – Pgs 283-284).

19.    On June 17, 2021, Appellant received an email from Human Resources FCI Tallahassee approving Appellant's FMLA from June 14 to July 8, 2021, and advising her she can take up to 4 days a month beginning July 8, 2021 not to exceed 480 hours total in 12 months. (Doc 25-31 – Pg 334).

20.    On July 9, 2021, Appellant sent an email to HRM Taylor asking several questions about the process for reassignment as a reasonable accommodation. Appellant inquired as follows:

> I asked [HRM Taylor] ... due to the hiring freeze I asked if I could be placed in those vacant positions at Montgomery. I listed the positions out. I asked her had anyone reached out to the Human Resource Manager at FPC-Montgomery to see if the positions was [sic] vacant but not posted. I asked her had anyone reached out to the Residential Reentry Manager in Montgomery to see if the position was vacant, but not posted. And then I asked her if she could ... if the Bureau had looked to see if there was [sic] any vacant positions that existed that I could telework from either home or Montgomery. She did not answer those questions.

(Doc 25-31 – Pg 193).

21.    On July 13, 2021, HRM Taylor responded to Appellant's July 9, 2021 email advising Appellant, in pertinent part, that:

> [W]e will now begin performing job searches Nationwide, including Washington, DC for vacant GS-11 through GS-12 positions for which you may be qualified. Regarding reaching out to the DOJ Components, we begin reaching out to and contacting them and request they begin

performing job searches in the Montgomery, AL area, Nationwide, including the Washington, DC area for potential job vacancies for which you may be qualified at the GS-11 and GS-12 grade level or equivalent salary positions, as soon as the time frame for the Bureau of Prison job searches has been exhausted.

(Doc 25-31 – Pg 287).

22.    On June 23, 2021, Appellant sent an email to HRM Taylor advising her of three vacant positions at FPC Montgomery, including a Residential ReEntry Specialist position within the Residential ReEntry Management Office, a Safety Manager position, and a Correctional System Manager position – all of which were GS-11 positions, and in fields wherein Appellant has experience and would otherwise be qualified for. (Doc 25-9 – Pg 2).

23.    On July 2, 2021, in response to Appellant's June 23, 2021 email, HRM Taylor issued Appellant a memorandum stating in pertinent part that job searches were conducted within a 50-mile radius of Montgomery, Alabama, on June 29, 2021, and July 1, 2021. Yet, no vacant positions were found to be available at that time. (Doc 25-10 – Pg 2).

24.    On July 26, 2021, Appellant received an email from HRM Taylor identifying five telework positions meeting Appellant's qualifications. (Doc 25-31 –Pg 195).

25.    On July 29, 2021, Appellant received an email from HRM Taylor indicating that one of the five telework positions presented to her on July 26, 2021

– a Program Support Specialist, GS-11 position in Birmingham, Alabama, did not, in fact, comply with Appellant's stipulations of fulltime telework. Since this position was approx. Eighty-seven miles from Appellant's home (approximately 160 miles round trip), Appellant declined the offer. (Doc 25-31 – Pg 291).

26.     On August 26, 2021, Appellant was offered a reasonable accommodation reassignment to the position of Management Analyst, GS-0343-12, at the Central Office, Washington, DC. This offer was a non-law enforcement ("NLE") position. (Doc 25-31 – Pg 196).

27.     On September 7, 2021, Appellant called the Central Office HRM Kenneth Davis to accept the Management Analyst position but first inquired about the position's status as an NLE position. HRM Davis suggested it must have been a mistake. (Doc 25-31 – Pgs 196-199).

28.     On September 10, 2021, HRM Davis sent Appellant an email informing her that she will be able to retain her law enforcement retirement; and that the August 26, 2021 job offer letter sent to her will be rescinded and a new job offer will be sent to her. (Doc 25-31 – Pgs 196-199).

29.     Between September 10, 2021, and October 7, 2021, Appellant engaged in email correspondence and telephone communications with HRM Davis, among others in HR, waiting for a status update on the "new job offer" she was expecting from Mr. Davis. (Doc 25-31 – Pgs 196-198).

30.    Finally, on October 7, 2021, Appellant received the revised job offer for the Management Analyst position. The offer was dated September 27, 2021. (Doc 16-1 – Pg 130).

31.    Between October 7, 2021, and October 20, 2021, Appellant engaged in another series of email correspondence and telephone communications with HRM Davis' assistant, Barry A. Ormond, who referred Appellant to follow up with Adejoke Boyd in an attempt to gain clarification of the Management Analyst position and its eligibility for full-time telework. (Doc 25-31 – Pgs 198-199).

32.    On October 20, 2021, Appellant received a revised job offer for the Management Analyst position indicating that the position, in fact, was telework eligible wherein Appellant would have had to work in Washington D.C. for a period of six months to learn the job and then apply for telework. (Doc 25-31 – Pg 314).

33.    On October 25, 2021, and in response to the October 20, 2021 offer letter, Appellant sent another email to HR requesting further clarification about the Management Analyst position. No one responded to Appellant's further inquiries; therefore, Appellant could neither accept nor decline the position. (Doc 16 -1 – Pgs 145-146, 183-184).

34.     On November 22, 2021, Appellant received an email from Warden

Strong indicating that her reasonable accommodation request was denied.

Appellant states in pertinent part:

> I opened the attachment, it said the accommodation was denied… the reasonable accommodation assignment, extended leave, placed in vacant position at home institution or other vacancy in the D.C., or nationwide area, with telework options was denied because of- you know, accommodation would cause undue hardship and accommodation would require removal of an essential job function.

(Doc 25-31 – Pgs 205-206).

35.     Appellant filed a request for reconsideration of the November 18,

2021, decision to deny her reasonable accommodation, and on December 20, 2021,

Deputy Regional Director S.W. Phelps concurred with the November 18, 2021,

denial of Appellant's reasonable accommodation request.[3] (Doc 25-31 – Pg 105).

*Reprisal (Previous Protected Activity)*

36.     Appellant had previously filed EEO complaints against the same BOP

officials identified in the matter at issue, and as mentioned in No. 8 above,

Appellant began requesting reasonable accommodations for her disabilities – a

protected activity in and of itself as early as May 10, 2021. (Doc 25-31 – Pg 188;

Doc 17 – Pg 7; Doc 16-15).

---

[3] The record is unclear as to the exact date Appellant's reasonable accommodation request was denied. There are references to the same request being denied on both November 18, 2021 and November 22, 2021.

*Absent Without Leave (AWOL)*

37.    Appellant had been out of work due to her mental health issues and ran out of leave by August 6, 2021. Prior to August 6, 2021, Appellant sent AW Colon an email asking her that when she runs out of leave, to put her on Leave Without Pay (LWOP) status and not AWOL. (Doc 25-31 – Pgs 201-205).

38.    Appellant sent another email to Warden Strong, AW Colon, and HRM Taylor, asking them for advanced leave not to exceed 240 hours. Appellant believed she would soon be granted a reasonable accommodation by being placed in a less stressful position. (Doc 25-31 – Pgs 201-205).

39.    After receiving no response, Appellant sent a second email request, a third email request, and a fourth email request asking to be placed on LWOP status, not AWOL.  AW Colon responded by offering Appellant FMLA leave four days a month. Appellant contested this, as she could not predict when she would be sick and require leave. Appellant attests that FMLA has nothing to do with this matter because Complainant was out of work due to a workers' compensation injury. Management never responded. (Doc 25-31 – Pgs 201-205).

40.    Although HRM Taylor possessed Appellant's DOL workers' compensation paperwork and medical documents, Appellant was placed on AWOL status on August 6, 2021. Complainant states she was put on AWOL status on

August 6, 2021, even after she sent those emails, and management did not respond. (Doc 25-31 – Pgs 201-205).

41.    On August 23, 2021, Appellant discovered she had, in fact, been placed on AWOL status instead of LWOP. (Doc 25-31 – Pgs 201-205).

42.    Appellant's AWOL status was ultimately changed to LWOP in November 2021, only after the Worker's Compensation Coordinator got involved. (Doc 25-31 – Pgs 201-205).

43.    Appellant's reasonable accommodation request for a reassignment was denied shortly after that on November 22, 2021. (Doc 25-31 – Pgs 201-205).

44.    On February 3, 2022, HRM Taylor issued a memorandum regarding Appellant's placement on AWOL. HRM Taylor states:

> [Appellant] was placed on AWOL on August 8 through August 14, 2021. It is unknown to me why her supervisor chose to place her on AWOL status when Ms. Gilder had approved FMLA documentation. The Human Resources Office corrected the error and placed her on Leave without pay (LWOP).

(Doc 25-31 – Pg 350).

## *EEO Complaint*

45.    On September 22, 2021, Appellant initiated contact with an EEO counselor to raise the claims of harassment, discrimination and reprisal discussed herein.  (Doc 25-31 – Pg 112).

46.    On October 26, 2021, Appellant filed a formal complaint of discrimination with the EEO office at FCI Tallahassee; on January 25, 2022, Appellant requested an amendment to her EEO complaint; and on January 31, 2022, BOP accepted Appellant's claims as follows:

Appellant was subjected to discrimination and reprisal when on:

1. August 23, 2021, Appellant was placed on Absent Without Leave (AWOL) status;

2. November 22, 2021, the warden denied Appellant's request for a reasonable accommodation;

3. December 20, 2021, management failed to place Appellant in another position as part of her reasonable accommodation; and

4. January 12, 2022, management placed another staff member in Appellant's Supervisor of Education position.

(Doc 25-31 – Pgs 163-164).

## Standard of Review

Decisions made on summary judgment are reviewed de novo, wherein the appeals court gives no deference to the lower court's decision and applies the same standard as the district court. *B&G Enters., Ltd. v. United States,* 220 F.3d 1318, 1322 (11th Cir. 2000); *Thornton v. E.I. Du Pont de Numours & Co.,* 22 F.3d 284, 288 (11th Cir. 1994); *Whatley v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999).

**Summary of the Argument**

During the events of this complaint, Appellant was a Supervisor of Education, GS-12 at the Bureau's FCI Tallahassee in Tallahassee, Florida. (Doc 16-1 – Pgs 17-18, 24). In 2021, Appellant began experiencing what she describes as a hostile work environment at FCI Tallahassee. (Doc 16-1 – Pg 45). As a result of the ongoing harassment, Appellant's medical condition worsened, and in May 2021, she was diagnosed with anxiety disorder. (Doc 25-31 – Pgs 188-189). On May 10, 2021, Appellant requested a reasonable accommodation, seeking extended leave and a reassignment out of FCI Tallahassee. (Doc 25-31 – Pgs 191).

Although the Bureau offered Appellant options for reassignment, the Bureau failed to communicate those offers with clarity or good faith. Appellant was forced to remain on Leave Without Pay ("LWOP") until the Bureau finally reassigned her to the Federal Prison Camp ("FPC") in Montgomery, Alabama, in November 2022 – an entire 18 months after requesting her reassignment as a reasonable accommodation. (Doc 16-1 – Pgs 14:17-25, 16:15).

On April 5, 2024, the District Court ruled, granting the Bureau's motion for summary judgment. (Doc 29). For the reasons discussed herein, the District Court erred by holding that (1) there are no genuine disputes of material fact; (2) Appellant cannot establish prima facie cases for the Bureau's failure to accommodate her disability or for retaliation; (3) Appellant's claim that the Bureau

discriminated against her when it denied her reasonable accommodation is time-barred; and (4) Appellant failed to present a convincing mosaic of circumstantial evidence that would otherwise cause a reasonable jury to conclude that the Bureau discriminated against Appellant regarding the claims discussed herein. Lastly, the Court erred by failing to view the facts of this matter in a light most favorable to Appellant.

## Argument

### I.     Appellee Bears the Burden of Proof on Summary Judgment

The movant, and *only* the movant, "bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1313-14 (11th Cir. 2007).

In ruling on motions for summary judgment, the United States Supreme Court held that courts cannot weigh the evidence or grant summary judgment merely because they believe the non-moving party will lose at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In an appeal from the United States District Court for the District of Columbia, the D.C. Circuit Court held that, among other things, a plaintiff is not limited to challenging an employer's explanation for its action to defeat summary judgment. *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1295 (D.C. Cir. 1998). Rather, a plaintiff may

defeat a motion for summary judgment and prevail at trial by presenting other evidence that permits an inference of discrimination. *Id.* The Supreme Court also held that a plaintiff's prima facie case and evidence concerning the defendant's reason(s) for its action created a jury issue and that the evidence from the moving party will be credited only when that evidence is uncontroverted, unimpeached, and from uninterested parties. *Reeves v. Sanderson Plumbing Prods., Inc.,* 120 S.Ct. 2097, 2110 (2000).

The courts follow this up by stating that summary judgment is inappropriate when the veracity of a witness is crucial or if issues of motive or intent are involved. *Schwapp v. Town of Avon,* 118 F.3d 106 (2nd Cir. 1997). Likewise, the court in *Grier v. Medtronic Inc.,* 99 F.3d 238, 240 (7th Cir. 1996) held that applying summary judgment standards required "special scrutiny" in cases that turn on issues of intent or credibility, while the court in *Anderson* held that, at the summary judgment stage, it is not the court's function to determine credibility or decide the truth of the matter. *Anderson,* 477 U.S. at 249. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. Likewise, the court in *Schwapp* held that courts must remain "particularly cautious" in granting summary judgment when the defendant's intent was at issue. *Schwapp,* 118 F.3d at 106. The court in *Hossaini v. Western Missouri Medical Center,* 97 F.3d 1085, 1088 (8th Cir. 1996) further

recognized the difficulty of disposing of issues involving intent at the summary judgment stage.

## II. Appellant Can Establish a Prima Facie Case for Failure to Accommodate her Disability

In establishing a prima facie case for a defendant's failure to accommodate a plaintiff's disability, the Appellant must demonstrate that: (1) she is an "individual with a disability" in that she (1a) has a physical impairment which substantially limits one or more major life activities or major bodily functions when in its active state and without regard to the ameliorative effects of mitigating measures; (1b) has a record of such an impairment; or (1c) is regarded as having an impairment, even if the impairment does not limit or was not perceived to limit a major life activity or major bodily function; (2) she is a "qualified disabled individual" in that she can perform the essential functions of her position, with or without a reasonable accommodation; (3) agency officials knew or should have known of Appellant's disability; (4) Appellant requested an accommodation that would enable her to perform the essential functions of her position; and (5) the agency failed to provide an accommodation that would otherwise enable Appellant to perform the essential functions of her position. ADA Amendments Act (ADAAA) of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (effective January 1, 2009); *U.S. Airways Inc. v. Barnett*, 535 U.S. 391 (2002); *Mengine v. Runyon*, 114 F.3d 415 (3rd Cir. 1997); *Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir.

1981); *Pantazes v. Department of Housing and Urban Development,* 366 F. Supp. 2d 57 (D.D.C. 2005).

Similarly, the Rehabilitation Act of 1973 prohibits the federal government from discriminating against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a); *McGeshick v. Principi,* 357 F.3d 1146, 1149 (10th Cir. 2004). "Part of the government's obligation is to provide reasonable accommodations to disabled employees." *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012). Failure to accommodate claims do not require evidence of discriminatory intent, whether direct or circumstantial, because the failure to provide a reasonable accommodation for a known disability is inherently "on the basis" of the plaintiff's disability. *Id.*

First, it is undisputed that Appellant is an individual with a disability in that she suffers from anxiety stemming from the hostility of her work environment, and her anxiety has caused her to suffer from panic attacks and miss work for substantial periods of time. (Doc 25-31 – Pgs 188-189). The record substantiates Appellant's disability as Appellant made numerous requests for leave relating to her disability; she made numerous requests for reasonable accommodation, also relating to her disability; she submitted extensive medical documentation substantiating her disability; the United States DOL accepted her anxiety and adjustment disorders as "work-related disabilities." (Doc 25-31 – Pgs 188-189).

The Court appears to concede Appellant's disability status as it did not question her status as a qualified individual with a disability or suggest in any way that she did not suffer from the disabilities claimed herein. (Doc 29). Second, although the Bureau argued that Appellant is not a "qualified" individual with a disability under the Americans with Disabilities Act ("ADA"), the Court neither addressed this element of Appellant's prima facie case, nor the element regarding the Bureau's knowledge of Appellant's disabilities. (Doc 29 – Pgs 8-12).

Lastly, it is undisputed that on May 10, 2021, Appellant requested a reasonable accommodation seeking reassignment to her "home" institution of Federal Prison Camp (FPC) Montgomery and an extended leave period–both requests directly related to her disabilities. (Doc 25-31 – Pgs 191, 274-275). Also, on May 10, 2021, Appellant sent a memorandum to Warden Erica Strong reiterating her request for reassignment in an attempt to avoid further exposure to the hostility at FCI Tallahassee. (Doc 25-31 – Pgs 276-277). Appellant then sent another memorandum to Warden Strong on June 2, 2021 requesting extended leave to accommodate her disabilities. (Doc 25-31 – Pg 218). Appellant's physician, Dr. Mieles, recommended that Appellant not return to work at FCI Tallahassee as the hostile work environment there was aggravating Appellant's mental health conditions. (Doc 16-1 – Pg 235:1-3).

In its defense, the Bureau argued that it denied Appellant's requests for reassignment based on the legitimate, non-discriminatory, business-related rationale that Appellant had "rejected" its two reassignment offers in August 2021, and the Court agreed. (Doc 17 – Pg 28); (Doc 29 – Pgs 10-11). The Court reasoned that, having located and offered at least one reassignment position to Appellant, "BOP had fulfilled its obligation (assuming a new position was a reasonable accommodation in the first place)." (Doc 29 – Pg 11).

However, as discussed herein, Appellant did not "decline" the Bureau's offers. Instead, on September 7, 2021, Appellant called Central Office HRM Davis to accept a Management Analyst position with the U.S. Marshals that had been offered to her as a reasonable accommodation on August 26, 2021. (Doc 25-31 – Pg 196). However, as Appellant indicated to HR multiple times between June 2021 and August 2021, Appellant indicated to the Bureau that a position more than 80 miles from her home would not fit her parameters. (Doc 25-31 – Pg 290). As the Management Analyst position with the U.S. Marshals was located in Washington, D.C., Appellant attempted to gain clarification and further information about the position – specifically, to see if the position was telework eligible. (Doc 25-31 – Pgs 198-199). Between August 26, 2021, when the Bureau offered Appellant the Management Analyst position, and October 25, 2021, Appellant exchanged numerous email correspondence and telephone calls with HR. (Doc 25-31 –Pgs

22

198-199). However, the Bureau failed to respond to Appellant's plethora of follow-up questions, and it failed to respond to Appellant's numerous requests for clarification regarding the specifics and the verbiage of the Bureau's offers. (Doc 25-31 –Pgs 198-199). Put simply, the Bureau had no legitimate, non-discriminatory, business-related reason for ignoring Appellant's numerous pleas for additional information and clarification regarding the offers. The record is devoid of any such non-discriminatory reason. Nevertheless, the Court sided with the Bureau's defense and erred by failing to acknowledge the pretextual evidence that suggest that Appellant was, in fact, being strung along by HR and with no apparent reassignment in sight.

Since the Court held that the Bureau had fulfilled its obligation in conducting Appellant's job search, it simultaneously erred by finding that Appellant had not presented any evidence to suggest the Bureau's defense for denying her request for reassignment as a reasonable accommodation was pretext for discriminatory retaliation. (Doc 29 – Pg 11).

**III.**    <u>**Appellant Establishes a Prima Facie Case for Reprisal**</u>

In establishing a prima facie case for reprisal, Appellant must demonstrate that: (1) she is a member of a protected class based on her participation in protected activity; (2) agency officials knew of Appellant's participation in protected activity before taking the actions at issue; (3) the Appellant was

subsequently subjected to materially adverse treatment by the agency, which in the retaliation context means that the action might have deterred a reasonable person from participating in said protected activity; and (4) that a nexus exists between the protected activity and the adverse treatment, which may be indicated by the adverse treatment at issue following Appellant's participation in protected activity so closely in time, or such a manner, that a retaliatory motive can be inferred. *Burlington Northern & Santa Fe Railway Co. v. White,* 126 S. Ct. 2405 (2006); *Hochstadt v. Worcester Foundation for Experimental Biology Inc.,* 425 F. Supp. 318 (D. Mass. 1976), *aff'd,* 545 F.2d 222 (1st Cir. 1976); *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee,* 129 S. Ct. 846 (2009); *Gomez-Perez v. U.S. Postal Service,* 128 S. Ct. 1931 (2008); and *Robinson v. Shell Oil Co.,* 117 S. Ct. 843 (1997).

Again, the Court erred when it dismissed Appellant's claims that the Bureau retaliated against her by (1) placing her on AWOL status, and (2) denying her request for reassignment as a reasonable accommodation. (Doc 29 – Pgs 12-15).

First, the record shows that Appellant is a member of a protected class based on her prior EEO activity, as well as her documented requests for reasonable accommodation relating to her disabilities. Neither the Bureau, nor the Court contest Appellant's participation in prior protected activity or the Bureau's knowledge of Appellant's prior protected activity. (Doc 17; Doc 29 – Pgs 12-15).

However, the Bureau argued that Appellant was neither subjected to an adverse employment action when she was placed on AWOL status nor when the Bureau denied her request for reassignment as a reasonable accommodation. (Doc 17 – Pgs 31-32).

Here, the Court erred when it found no causal link between Appellant's placement on AWOL status or the denial of Appellant's request for reassignment as a reasonable accommodation. (Doc 29 – Pgs 13-15). However, Appellant argues an inference of reprisal given the proximity in time between her most recent protected activity (requesting a reasonable accommodation on May 10, 2021) and being placed on AWOL status on August 6, 2021. (Doc 25-31 – Pgs 201-205). Despite the relative proximity between Appellant's protected activity and the adverse action of being put on AWOL, the Court nevertheless held that:

> [T]he Eleventh Circuit has made clear that to establish an inference of retaliation in the absence of other evidence, "the temporal relationship between the protected activity and the adverse employment action must be *very close*." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (emphasis added) (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2008)). "Even a three-month interval between the protected expression and the employment action... is too long," *Id.*; *see also Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004). More than three months passed between Gilder-Lucas's reasonable-accommodation request and her placement on AWOL status.

(Doc 29 – Pgs 13-14).

25

The Court erred in its time calculation, as it suggests that more than three months had passed between Appellant's protected activity and her placement on AWOL status. *Id.* However, that is incorrect. Again, Appellant engaged in protected activity on May 10, 2021, and learned she was placed on AWOL status beginning August 6, 2021 – *less than* three months. According to Eleventh Circuit precedent, the Court should have ruled there is an inference of retaliation given these facts.

Although the Court acknowledged that plaintiffs "may still be able to prove their case with what is sometimes called a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker,'" the Court erred by failing to consider Appellant's numerous independently substantiated examples of pretext for discriminatory animus. *(Doc 29 – Pg 17; Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1328, 1327-28 (11th Cir. 2011). In fact, these examples create the very mosaic of circumstantial evidence referenced by the Court above. Accordingly, to establish pretext, a plaintiff must demonstrate either directly that a discriminatory reason more than likely motivated the defendant in its actions or indirectly that the defendant's proffered explanation is unworthy of credence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

26

Appellant rebuts the District Court's analysis and hereby establishes, by a preponderance of the evidence, the following BOP defenses as being mere pretext:

First, Warden Strong's testimony is unworthy of credence. In her affidavit, Warden Strong feigned ignorance regarding the circumstances surrounding Appellant's placement in AWOL status. When asked what explanation was given to the Appellant for being placed in AWOL status, Warden Strong stated multiple times: "I am [sic] was not present for the explanation," and suggested she was not sure if Appellant previously filed any EEO complaints against the person who placed her in AWOL status; she was not aware of the extent of knowledge, if any, the person who placed Appellant in AWOL status had of Appellant's disabilities, and she was not aware of the person who placed Appellant in AWOL status treating persons without known disabilities more favorably under similar circumstances. (Doc 25-31 – Pgs 219-220).  Conversely, AW Colon outright stated that Warden Strong was the person responsible for placing Appellant in AWOL status. AW Colon stated:

> I am aware the claimant was placed on AWOL status due to no leave balance availability. The complainant was granted advanced sick leave. Upon exhausting her leave balance, the complainant requested additional advanced sick leave, which was not approved by Warden E. Strong. In one occasion, Warden Strong notified me the claimant was to be placed on AWOL status because she had no leave authorized or available. I do not remember the date(s) of AWOL status. I am aware the Human Resources Manager, Shellie Taylor, had provided a response to the claimant indicating her FMLA leave had been approved for a pe1iod of 2 weeks, and a total of 4 days of leave per month

thereafter. Upon the claimant requesting additional advanced sick leave, I was instructed by Warden E. Strong to send her a response reiterating the information already provided by the Human Resources Manager.

(Doc 25-31 – Pg 232).

Second, the Bureau's actions of placing Appellant in AWOL status appear more likely to have been motivated by discriminatory and/or retaliatory animus than by legitimate, non-discriminatory, business-related reasons. HRM Taylor stated, "I do not know why Ms. Colon insisted on the AWOL. I tried to explain the situation to her and that [Appellant] should be given the time off due to her doctor's notes. Ms. Colon proceeded with the AWOL." (Doc 25-31 – Pg 246). Acknowledging Warden Strong as AW Colon's direct supervisor and considering AW Colon's statement above identifying Warden Strong as the person responsible for placing Appellant in AWOL status, an independent inference of discriminatory and/or retaliatory animus can, and should, be drawn regarding Warden Strong's actions towards Appellant.

**IV.    The District Court Failed to View the Claims in a Light Most Favorable to Appellant**

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he proper inquiry on summary judgment is 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stitzel v. N.Y. Life Ins. Co.*, 361 F. App'x 20, 22 (11th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251–52). A motion for summary judgment should be denied "[i]f reasonable minds could differ on the inferences arising from undisputed [material] facts." *Pioch v. IBEX Eng'g Servs.*, 825 F.3d 1264, 1267 (11th Cir. 2016) (quoting *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997)).

Further evidence of pretext is provided by HRM Taylor, who asserted:

As with a [sic] me here at this institution, Ms. Gilder-Lucas was also harassed by being moved out of her office for nearly 9 months. She was assigned tasks she was not cleared to do, such as clear in inmates in R&D without the proper CIMS training. This type of humiliation by being moved out of your position and then being told you have to go back is extremely stressful. On top of that she had a department had did not want to follow a new supervisor. One of the employees was very aggressive in a meeting to the point of someone having to stand between M s. Gilder-Lucas and the employee to protect her. It is a very difficult place to work when you do not have any support from your superiors.

(Doc 25-31 – Pg 250).

HRM Taylor, who in large part was responsible for processing Appellant's reasonable accommodation requests, further stated:

[Appellant] had an approved Reasonable Accommodation, an approved FMLA case and an approved DOL case. Deborah Colon, Acting Associate Warden placed her on AWOL despite Ms. Gilder-Lucas being in this status. It was later changed (per DOL) to LWOP.

29

> I do not know why Ms. Colon insisted on the AWOL. I tried to explain
> the situation to her and that Ms. Gilder-Lucas should be given the time
> off due to her doctor's notes. Ms. Colon proceeded with the AWOL.

(Doc 25-31 – Pg 244-245).

HRM Taylor added, "I do not know why Ms. Colon refused to do

[Appellant's] time appropriately. Even when we were told by DOL (Grand Prairie)

that it needed to be corrected, Ms. Colon refused to speak with the specialist, as

well as certify the corrections." (Doc 25-31 – Pg 252).

When the investigator asked about the management's response to

Appellant's complaints, HRM Taylor stated, "Nothing. The time was not changed

until Ms. Gilder-Lucas's DOL case manager emailed and TOLD the institution to

change it." (Doc 25-31 – Pg 247).

When asked by the investigator whether she believed Appellant was being

discriminated against due to her disability when she was placed on AWOL, HRM

Taylor stated, "I believe that she is not well liked by the management, and they did

not take her current condition, or her status (RA, OWCP case, and FMLA) into

consideration when making their determination of what leave to allow her to use."

(Doc 25-31 – Pg 247). HRM Taylor added:

> As with a [sic] me here at this institution, Ms. Gilder-Lucas was also
> harassed by being moved out of her office for nearly 9 months. She was
> assigned tasks she was not cleared to do, such as clear in inmates in
> R&D without the proper CIMS training. This type of humiliation by
> being moved out of your position and then being told you have to go
> back is extremely stressful. On top of that she had a department that did

30

not want to follow a new supervisor. One of the employees was very aggressive in a meeting to the point of someone having to stand between Ms. Gilder-Lucas and the employee to protect her. It is a very difficult place to work when you do not have any support from your superiors.

(Doc 25-31 – Pg 250).

However, the Court erroneously failed to acknowledge HRM Taylor's

testimony *at all*; thus, it failed to consider the claims at issue in a light most

favorable to Appellant. The Court mistakenly reasoned:

> Gilder-Lucas also argues that sworn statements of Shellie Taylor, an FCI Tallahassee human resources manager, show a causal link. ECF No. 26 at 23-24. When asked whether she believed that Gilder-Lucas "was being retaliated against for engaging in protected EEO activity when she was placed on AWOL status," Taylor replied that she was "sure that had something to do with it." ECF No. 25-31 at 247. BOP contends this statement is hearsay and speculation. ECF No. 28 at 8; *see also* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 602, 802. The statement is indeed speculative, and Gilder-Lucas points to nothing in the record to show Taylor had any basis for her speculation. Because Taylor's statement would be inadmissible at trial, I will not consider it for summary-judgment purposes.

(Doc 29 – Pg 14).

However, the Court failed to consider that HRM Taylor's testimony is

included within this matter's ROI, and, as such, HRM Taylor's affidavit, dated

February 15, 2022, is signed under penalty of perjury. (Doc 25-31 – Pgs 243-254).

Moreover, Appellant has cited numerous self-authenticating email correspondence

between herself and HRM Taylor, which are also located within the ROI and cited

herein. Accordingly, the District Court clearly erred in dismissing HRM Taylor's testimony regarding this matter.

## V.    <u>Appellee Failed to Prove the Lack of Genuine Issues of Material Fact</u>

As mentioned supra, at the summary judgment stage, the court's function is to first determine whether there are genuine issues of material fact for trial. *Liberty Lobby, Inc.,* 477 U.S. at 249. Pursuant to 29 C.F.R §1614.109(g), a party is entitled to a decision without a hearing or summary judgment if the moving party can demonstrate there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). Accordingly, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the moving party carries the initial burden of making this assertion with the court, the burden subsequently shifts to the opposing party to come forward with specific facts to show that a genuine issue remains for trial. *Celotex,* 477 U.S. at 323; and *DeHorney v. Bank of America Nat. Trust & Sav. Assoc.,* 879 F.2d 459 (9th Cir. 1989). The Federal Rules of Civil Procedure stipulate that parties opposing summary judgment must support their assertion by meeting the following requirements:

> A party asserting that a fact cannot be, or is genuinely disputed, must support that assertion by: (a) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (b) showing that the materials cited to do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Here, the Court found that the Bureau had met its burden by showing a lack of material facts in dispute. (Doc 29 – Pg 2). In reaching this conclusion, the Court held that Appellant had "declined" the reassignments the Bureau offered her. (Doc 29 – Pg 10). In relying upon the mistaken presumption that Appellant had "declined" the Bureau's multiple offers, the Court erred further by finding the Bureau was justified in denying Appellant's request for reassignment as a reasonable accommodation on November 18, 2021.

The Bureau explained that Appellant was offered a position with the U.S. Marshal's Service and a Management Analyst position within the Agency, yet Appellant "never accepted either position." (Doc 17 – Pg 21). Appellant does not dispute this statement. However, the Court simply disregarded the distinction between "not accepting" the Bureau's job offers and "declining" said job offers. Through a series of email correspondence between September 16, 2021, and September 21, 2021, the evidence shows that Appellant undeniably sought clarification from HR regarding the Management Analyst position offered by the Bureau. (Doc 25-31 – Pgs 196-199). However, due to the Bureau's failure to provide clarification and additional details about the Management Analyst position

33

Appellant was requesting, Appellant could not make a decision. Thus, she neither accepted nor declined that offer. The emails indicate that Appellant advised HRM Taylor that no one had told her anything since the initial job offer was supposed to be corrected, and that Appellant sought additional clarification as to where and to whom she was expected to report, and potential start dates from HRM Taylor. (Doc 25-14 – Pgs 1-2). However, HRM Taylor never responded to Appellant's inquiries. (Doc 25-14 – Pg 1).

In an email correspondence dated October 7, 2021, Appellant sought further clarification from HRM Taylor, HRM Kenneth Davis (Central Office), and Adejoke Boyd, Human Resources Specialist (HRS) (Central Office), regarding the Management Analyst position at issue. Appellant wrote:

> Good morning, please contact me regarding the job offer that I recently received. I was offered the position due to a Reasonable Accommodation request. I do not have all the details of the reasonable accommodation and I was supposed to get a revised, updated job offer several week ago however I have not received it. I was contacted by my new Supervisor however, he did not have details regarding this offer. The job announcement I was selected from is C0-2021-0279. I have been trying to make contact with [sic] someone for several weeks now and it has proven unsuccessful.

(Doc 25-14 – Pg 2).

Additionally, Appellant stated that, on October 7, 2021, she sent HRS Boyd an email requesting further information regarding her reasonable accommodation, as she has not yet received an updated job offer. (Doc 25-15 – Pgs 1-2). In

response to Appellant's email, HRS Boyd sent Appellant a revised job offer that same day for the Management Analyst position that she originally sent to the wrong email box days prior. (Doc 25-15 – Pg 2). In HRS Boyd's October 7, 2021, email to Appellant, she asked that Appellant sign the revised offer by close of business the same day. (Doc 25-15 – Pg 2). This was the first time the Appellant received the job offer with the position description attached. When the Appellant read the position description, she noticed the job offer placed her in Washington, DC, full-time, contrary to what was agreed upon. (Doc 25-15 – Pg 1). Appellant reached back out to HRS Boyd on October 12, 2021 requesting that she contact her as soon as possible to discuss further details regarding her Reasonable Accommodation. (Doc 25-15 – Pg 2). Appellant stated in her email to HRS Boyd, "I need to know before signing." (Doc 25-15 – Pg 2).

On October 14, 2021, Appellant took her concerns regarding the Management Analyst position to Tiffany Sion, National Reasonable Accommodation Coordinator. Appellant wrote:

> Good morning, this is Angela Gilder-Lucas, I'm writing to see if you have any updates concerning my Reasonable Accommodation? I haven't signed the Job Offer yet because it wasn't clear. I really need to tell them something because I don't want to miss out on that job. If you need to call me, I can be reached at [redacted]. Thank you for your assistance in this matter.

(Doc 25-16 – Pg 2).

On October 18, 2021, Appellant sent another email to HRS Boyd stating:

> Good morning Ms. Boyd, I don't know if you're aware or not but I am still waiting to hear something back concerning the Reasonable Accommodation verbiage for the job offer. I am reaching out to let you know that I am still interested in the position. I am supposed to go on the books with the position this upcoming pay period (Sunday, 10/24/2021). Do you see this happening or have you heard?

(Doc 25-17 – Pg 2).

Instead of contacting Appellant to discuss the details of her reasonable accommodation, HRS Boyd merely sent Appellant another job offer for the same Management Analyst position with even more confusing verbiage. (Doc 25-15 – Pg 1). Appellant told all parties in her communications with them that she was interested in the Management Analyst position and that she needed additional clarification before signing, yet each individual failed to communicate with the Appellant. (Doc 25-17 – Pg 1). Subsequently, on November 22, 2021, Appellant's reasonable accommodation request was ultimately denied. (Doc 25-51 – Pg 164). After requesting reconsideration of her denied accommodation, Appellant received notification from Senior Regional Deputy Director, S.W. Phelps on December 20, 2021, indicating that her request for reconsideration was also denied.  (Doc 25-31 – Pg 351).

On May 31, 2022, Appellant reengaged HRM Taylor in email correspondence seeking a return to work. (Doc 25-18 – Pg 3). Appellant wrote:

> Good morning, the attachment contains an updated return to work excuse. I am requesting to return to duty. Seemingly, my position as Supervisor of Education has been filled, thus, I am requesting

placement at FPC Montgomery or the RRM Office Montgomery until my fitness for duty/additional medical documentation update is complete. If placement is not authorized, I am requesting placement on Administrative Leave until the Agency makes a decision or choose to update my status. Additionally, I am requesting an updated SF 50 as the current one is not valid and is set to expire June 2022. A response is requested detailing my requests. Thank you for your attention to this email.

(Doc 25-18 – Pg 3).

After receiving no response from HRM Taylor, Appellant emailed her again on June 7, 2022, stating, "I am seeking a response to this email that was sent on May 31, 2022. Your attention to this matter is greatly appreciated." (Doc 25-18 – Pg 3). On June 8, 2022, HRM Taylor responded to Appellant stating in pertinent part, "We have completed your Reasonable Accommodation (RA) process… we have completed the RA job search process on our end." (Doc 25-18 – Pg 2). Appellant remained engaged with HRM Taylor and HRS Boyd throughout June 2022, and into July 2022, still seeking answers, and clarification as to why HR had ceased processing her RA request. (Doc 25-19 – Pgs 2-3). An email from Appellant to HRM Taylor on July 8, 2022, reads:

Good Morning Ms. Boyd,

In light of your statement reference my declination of subject job, on October 25, 2021, I returned the offer letter with a request for additional clarification for the job offer. In this same correspondence, I asked if supporting documentation was required and received no response. 27 October 2021, I sent a follow-up email requesting status of the offer again with no response. 16 November 2021, another follow-up email was sent requesting an updated status on the Reasonable

37

Accommodation I was awarded regarding the Management Analyst position and/or any other searches; no response.

I am not understanding why on July 6, 2022, you are now stating the job was rescinded and your agency had moved on. Please provide documentation where I declined this offer as well as your agency's notification to me that the offer had been rescinded.

(Doc 25-19 – Pg 2).

There should be no doubt that Appellant never "declined" either of the two reassignments offered by the Bureau. Instead, the Bureau failed to communicate adequately with Appellant, which led to its erroneous assertion that Appellant had declined the Bureau's two job offers. As the Bureau maintains this argument contrary to the convictions held by Appellant and contrary to the evidence produced supra, the question as to whether Appellant "declined" the Bureau's job offers undeniably remains a genuinely disputed material fact – and a critical element of pretextual discrimination and retaliation.

Undoubtedly, the question of whether Appellant "declined" the Bureau's reassignment offers is a material fact upon which Appellant's entire case hinges, which to date remains in dispute. Thus, the Bureau has failed to establish by a preponderance of the evidence a genuine lack of disputed material facts. Again, since only the movant "bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen,* 495 F.3d at 1313-14. If for no other reason, the Bureau's

motion for summary judgment unequivocally fails.

## VI.    <u>Appellant Exhausted her Administrative Remedies</u>

Lastly, the Court erred when it agreed with the Bureau's argument that Appellant's claim regarding the denial of her reasonable accommodation on November 18, 2021, is time-barred. (Doc 17 – Pgs 15-17; Doc 29 – Pg 7). When a defendant contests the issue of administrative exhaustion, as the Bureau does here, a plaintiff must establish that she has met the filing requirements in a timely manner. (Doc 17 – Pg 17; *Green v. Cou. Union Foundry Co.,* 281 F.3d 1229, 1233 (11th Cir. 2002). However, Appellant establishes herein that the core of the Bureau's argument is flawed and that Appellant did, in fact, exhaust her administrative remedies before removing her case from its administrative proceedings.[4]

On November 29, 2021, the Agency acknowledged receipt of Appellant's request to reconsider the November 18, 2021, denial of her request for reasonable accommodation. (Doc 17 – Pg 17). The notice acknowledging receipt of Appellant's request specifically states that the request was being forwarded to Senior Deputy Regional Director S. W. Phelps for review and response. (Doc 25-

---

[4] The actual date of the denial of Appellant's reasonable accommodation varies throughout the record, and is reflected as both November 18, 2021 and November 22, 2021. For the purposes of timeliness in initiating EEO contact, and in viewing the evidence in a light most favorable to the Appellee, Appellant will acknowledge November 18, 2021 as the date of the denied accommodation.

31 – Pg 104). On December 20, 2021, Senior Deputy Regional Director Phelps

issued a memorandum concurring with the November 18, 2021 denial of

Appellant's request for reasonable accommodation. (Doc 25-31 – Pg 105). As

accurately pointed out in the Bureau's motion for summary judgment, 29 C.F.R. §

1614.105(a) indicates:

> (1)  An aggrieved person must initiate contact with a Counselor
> within 45 days of the date of the matter alleged to be
> discriminatory or, in the case of personnel action, within 45 days
> of the effective date of the action.

29 C.F.R. § 1614.105(a)(1). However, the Bureau fails to consider the very next

section of that same statute, which states:

> (2)  The agency or the Commission shall extend the 45-day time limit
> in paragraph (a)(1) of this section when the individual shows that
> he or she was not notified of the time limits and was not
> otherwise aware of them, that he or she did not know and
> reasonably should not have been known that the discriminatory
> matter or personnel action occurred, that despite due diligence he
> or she was prevented by circumstances beyond his or her control
> from contacting the counselor within the time limits, **or for other
> reasons considered sufficient by the agency or the
> Commission**

29 C.F.R. § 1614.105(a)(2) (emphasis added).

Taking into consideration § 1614.105(a)(2), and the Bureau's December 20,

2021, final decision on Appellant's request for reconsideration, the 45-day window

to initiate contact with an EEO counselor is inherently extended to February 5,

2022 (45 days from December 20, 2021). As Appellant filed the request to amend

her EEO complaint on January 25, 2022, she was well within the requisite 45-day window; her claim regarding the November 18, 2021, denial of her reasonable accommodation is not time-barred; and thus, Appellant has, in fact, exhausted her administrative remedies.

Notwithstanding the argument above, Appellant exhausted her administrative remedies in multiple ways. Since the Bureau's December 20, 2021, decision merely affirms its November 18, 2021, denial of Appellant's request for reasonable accommodation, the December 20, 2021, decision should be viewed as an extension of the November 18, 2021 denial and not a separate or discrete adverse action. Thus, by and through the inherent context of the December 20, 2021 decision, Appellant's claim that the Bureau failed to accommodate her disability when, on November 18, 2021, it denied Appellant's requested reasonable accommodation is properly before this Court under the continuing violation exception. The Eleventh Circuit explains the doctrine of continuing violations as follows:

> The purpose of the continuing violations doctrine "is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Rager v. Augustine*, 760 F. App'x 947, 951 (11th Cir. 2019); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1221-22 (11th Cir. 2001) ("The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated.") (internal quotation omitted).

*Raj Jones v. Mia.-Dade Cty.*, No. 1:22-cv-21990-DPG, 2024 U.S. Dist. LEXIS 138190, at *13 (S.D. Fla. Aug. 5, 2024)

Thus, Appellant's claim that the Bureau failed to accommodate her disability when, on November 18, 2021, it denied her request for reasonable accommodation was, in fact, timely raised by the association of Appellant's January 25, 2022, request to amend her complaint to include the claim that, on December 20, 2021, the Bureau denied her reasonable accommodation. (Doc 25-31 – Pgs 163-164). Therefore, Appellant has exhausted her administrative remedies and properly brought these claims before this Court. As such, the Court's holding to the contrary is incorrect and should be reversed.

## Conclusion

For the reasons discussed herein, the District Court erred by holding that (1) there are no genuine disputes of material fact; (2) Appellant cannot establish prima facie cases for the Bureau's failure to accommodate her disability or for retaliation; (3) Appellant's claim that the Bureau discriminated against her when it denied her reasonable accommodation is time-barred; and (4) Appellant failed to present a convincing mosaic of circumstantial evidence that would otherwise cause a reasonable jury to conclude that the Bureau discriminated against Appellant regarding the claims discussed herein. Lastly, the Court erred by failing to view the facts of this matter in a light most favorable to Appellant.

WHEREFORE, having established the above errors in the District Court's ruling on this matter by a preponderance of the evidence, Appellant respectfully asks this Court to REVERSE and REMAND this case back to the District Court so that a jury trial can be conducted on the merits.

Date: September 30, 2024          *David Scher*

David Scher
Hoyer Law Group, PLLC
1300 I Street NW
Washington, D.C. 20005
202-975-4994
dave@hoyerlawgroup.com

*Attorney for Appellant Angela Gilder-Lucas*

## Certificate Of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 9,969 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

*David Scher*

David Scher

*Attorney for Appellant Angela Gilder-Lucas*

**Certificate Of Service**

I hereby certify that, on September 30, 2024, I served a copy of the foregoing upon counsel for Appellee by filing the same via the Court's CM/ECF system.

*David Scher*
David Scher

*Attorney for Appellant Angela Gilder-Lucas*